# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GORDON D. NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-186-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Gordon D. Nichols requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born March 19, 1964, and was forty-eight years old at the time of the administrative hearing (Tr. 34, 156). He has a ninth grade education, and has worked as a heavy equipment operator and maintenance mechanic (Tr. 172, 66). The claimant alleges he has been unable to work since January 6, 2009, due to back and knee problems (Tr. 199). [2]

**Procedural History**

On May 3, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 156-57). His application was denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 11, 2013. The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with occasional climbing, balancing, stooping, kneeling, crouching and crawling. Additionally, the ALJ found the claimant required the option to

---

[2] The claimant states in his brief that the onset date should be amended to April 6, 2011, which is the day following denial of his prior claim for disability benefits.

alternate between sitting and standing at will. Further, he found the claimant could perform unskilled work that needed little or no judgment to do simple duties and that could be learned on the job in a short amount of time. He also found the claimant required simple, direct, and concrete supervision; interpersonal contact with supervisors and co-workers incidental to the work performed; and no contact with the general public. The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, final inspector and office helper (Tr. 23).

### Review

The claimant contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ: (i) improperly analyzed the claimant's treating physician's opinion, (ii) formed his own medical opinions, and (iii) did not properly develop the record. The undersigned Magistrate Judge finds the ALJ *did* make a number of errors at step four, and the decision of the Commissioner should therefore be reversed.

The relevant medical evidence reveals the claimant initially consulted with Dr. Gerald Hale on February 26, 2007 for an epidural steroid injection (Tr. 237-38). The record contains no further treatment notes from Dr. Hale until June 28, 2010, although Dr. Hale indicated that day he last saw the claimant on March 5, 2010, suggesting at least one prior consultation not contained in the record. The claimant sought treatment for back pain from Dr. Hale beginning June 28, 2010 and continuing through December 19, 2012 (Tr. 241-47, 270-74, 280-82, 286-88, 291-94). On December 23, 2010, Dr. Hale diagnosed the claimant with refractory back pain with inoperable degenerative disc

disease, chronic pain, hypotestoteronism secondary to chronic opiate use and injury to back, and anxiety/depression (Tr. 243). Dr. Hale's March 18, 2011, treatment notes indicate he wrote a letter opining the claimant was disabled and unable to work, although his notes do not reflect any further information regarding the letter, and the letter itself is not included in the record (Tr. 242). On July 12, 2011, the claimant presented to Dr. Hale with pain in his thoracic spine. On examination, Dr. Hale found paraspinous spasms of the thoracic region and the lumbar region with tenderness at L2-3 and L3-4 and normal reflexes and strength (Tr. 271-72). Dr. Hale ordered an x-ray of the claimant's thoracic spine and it revealed some degenerative endplate irregularity at T11 and bridging osteophytosis on the right at T10-11 and on the left at T11-12, which was assessed as degenerative spondylosis of the lower thoracic spine (Tr. 277). The claimant mostly consulted with Dr. Hale for back pain approximately every three months between June 2010 and December 2012 and was routinely provided medication refills for pain, anxiety, and muscle spasms (Tr. 242, 243, 245, 246, 272, 274, 282, 285, 288, 292, 294). Through June 2011, Dr. Hale found paraspinous spasms of the lumbar region with tender intervertebral space at L2-3 and L3-4 and normal reflexes and strength (Tr. 246, 244, 241, 273). Beginning in July 2011 through December 2012, Dr. Hale found paraspinous spasms of the thoracic region *and* the lumbar region with tenderness at L2-3 and L3-4 and normal reflexes and strength (Tr. 271, 281, 284, 287, 291, 293).

State reviewing physician Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on June 16, 2011, and indicated that the claimant had functional abilities consistent with a limited range of light work (Tr. 263). He found the

claimant could lift/carry up to twenty pounds occasionally and up to ten pounds frequently; sit/stand/walk about six hours in an eight hour workday; and occasionally climb, balance, stoop, kneel, crouch or crawl (Tr. 263-64).

The claimant's neighbor, Joe Weatherly, prepared a Third Party Function Report on June 21, 2011 (Tr. 193-200). He stated the claimant's daily activities included feeding and watering chickens, taking care of pets, watching the news, and reading, but that he and his wife assisted the claimant with caring for his animals (Tr. 194). He indicated the claimant cleaned house and did laundry two or three times a week but required frequent breaks and encouragement (Tr. 195). Mr. Weatherly also indicated the claimant went outside every day to observe wildlife and that the claimant helped him tend to his small garden (Tr. 196-97). He stated the claimant could walk for thirty minutes before needing to rest for ten minutes, could pay attention for one hour, could follow written and spoken instructions fairly well, but could not handle stress or adapt to change in routine well (Tr. 198-99). He also stated he believed the claimant exhibited extreme anxiety and depression and lacked motivation (Tr. 199).

At the administrative hearing, the claimant testified he was injured in a work-related motor vehicle accident in November 2003 (Tr. 37). He stated he continued to work for six years after the accident without any accommodations for his injuries because he was taking pain medication (Tr. 39). He also stated he is unable to work because he takes too much pain medication and has mental disorders (Tr. 40-41). He testified his pain is from his knees to his neck; it radiates into his legs; and his medications alleviate some, but not all of his pain (Tr. 41-43, 54). His day typically includes household chores

such as laundry, dishes, and cooking (Tr. 44). In response to the ALJ's question about the possibility of there being other work he could do, the claimant testified he "wouldn't rule out the possibility" (Tr. 51). Additionally, he testified he could sit for forty-five minutes before needing to change positions and could stand or walk for forty-five minutes before needing to sit or lie down (Tr. 57-58).

In his written opinion, the ALJ found at step two that the claimant had the severe impairments of multilevel degenerative disc disease of the lumbar and thoracic spine, anxiety, and depression, as well as the nonsevere impairments of knee problems, left shoulder bursitis, possible right shoulder rotator cuff tear, and hypotestosteronism (Tr. 16). At step four, the ALJ summarized the claimant's hearing testimony, Dr. Hale's treatment notes, most of the objective medical evidence, and mentioned the claimant's neighbor's Third Party Function Report (Tr. 19-22). The ALJ assigned little weight to both Dr. Hale's opinion and the Third Party Function Report (Tr. 20-21).

The medical opinions of treating physicians such as Dr. Hale are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine what weight, if any, to assign to the opinion using the following factors provided in 20 C.F.R. § 404.1527: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physician. The ALJ assigned little weight to Dr. Hale's opinion that the claimant was disabled and unable to work because he found it concerned an issue reserved to the Commissioner and because he found it was inconsistent with both Dr. Hale's own reports as well as the record as a whole (Tr. 20). While the ALJ purportedly identified inconsistencies between Dr. Hale's opinion and treatment notes by stating that his physical examinations consistently showed the claimant's muscle stretch reflexes and motor strength were not affected by his lumbar and thoracic region spasms, he did not specify inconsistencies between Dr. Hale's opinion and any *other* medical evidence in the record (Tr. 20-21). The ALJ then gave great weight to the non-examining state reviewing physician opinions, whose opinions he

found consistent with unspecified portions of the record. This was error. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *citing Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Additionally, the ALJ was clearly not required to give controlling weight to Dr. Hale's opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), however, he *was* required to determine the proper weight to give the opinion by applying the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Instead, the ALJ simply declined to give Dr. Hale's opinion controlling weight because it was not fully consistent with unspecified medical evidence of record; therefore, he improperly evaluated the treating physician's opinion.

Furthermore, Social Security Ruling 06-03p provides the standards for evaluation of third party evidence such as that provided by the claimant's neighbor, Mr. Weatherly. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ mentioned the Third Party Function Report, but discredited it by stating Mr. Weatherly was not a doctor and could not be believed because he was a friend of the claimant, wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's]

allegations.'  In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis.

Because the ALJ failed to properly evaluate Dr. Hale's opinion and the Third Party Function Report in accordance with the controlling standards, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**